# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman Basic MICHAEL L. MERRITT
### United States Air Force

## ACM 38819

## 2 November 2016

Sentence adjudged 4 March 2015 by GCM convened at F.E. Warren AFB, Wyoming.  Military Judge:  Mark W. Milam (sitting alone).

Approved Sentence:  Dishonorable discharge, confinement for 9 years, and forfeiture of all pay and allowances.

Appellate Counsel for the Appellant:  Major Jeffrey A. Davis.

Appellate Counsel for the United States:  Captain Collin F. Delany and Gerald R. Bruce, Esquire.

Before

MAYBERRY, SPERANZA, and JOHNSON
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SPERANZA, Judge:

Consistent with Appellant's pleas pursuant to a pretrial agreement, a military judge sitting as a general court-martial found Appellant guilty of two specifications of aggravated sexual contact with a child who had not attained the age of 12 years in violation of Article 120, UCMJ, 10 U.S.C. § 120.[1]  In pertinent part, Appellant was convicted of intentionally touching AS's genitalia and MF's inner thigh with an intent to gratify his sexual desire. The military judge sentenced Appellant to a dishonorable discharge, 10 years of

---

[1] The specifications alleged misconduct occurring prior to 27 June 2012.

confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. In accordance with the pretrial agreement, the convening authority only approved nine years of confinement but approved the remainder of the adjudged sentence.

On appeal, Appellant raises six errors pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).[2] We address four of his complaints. We have considered the remainder but find them without merit. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

*Background*

At a previous court-martial, a military judge convicted Appellant, consistent with his pleas pursuant to a pretrial agreement, of committing multiple sexual offenses, including sodomy, over a number of years against his minor stepdaughter, CRH; assaulting MLW, a child under the age of 16 years, by unlawfully kissing her on the mouth; kidnapping KNB, a child under age the of 16 years; and, attempting to kidnap a KB, another child under the age of 16 years. The military judge sentenced Appellant to a dishonorable discharge, 50 years of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. Per the terms of that pretrial agreement, the convening authority only approved 25 years of confinement but approved the remainder of the sentence as adjudged.

Appellant's previous court-martial received media attention. The Air Force Office of Special Investigations (AFOSI) opened a developmental case file to manage additional allegations of abuse that might be generated by the public's awareness of Appellant's misconduct. Consequently, AS and MF separately disclosed Appellant's misconduct. Their allegations resulted in further investigation and the specifications charged in this case. AS and MF were friends of CRH when Appellant was stationed in Germany.

Additional facts necessary to resolve the assignments of error are included below.

---

[2] Appellant presented the following issues:
> I. Whether the military judge erred by admitting the stipulation of fact from Appellant's previous court-martial during the sentencing phase of this trial.
> II. Whether improper evidence was admitted during sentencing by the government's expert witness.
> III. Whether trial counsel made improper arguments during sentencing argument.
> IV. Whether actual and apparent unlawful command influence so permeated Appellant's case that it was impossible for Appellant to receive fairness in the pretrial, trial, and post-trial processing of his case.
> V. Whether the government engaged in unlawful command influence and prosecutorial misconduct by interfering with Appellant's access to witnesses.
> VI. Whether the military judge violated Appellant's rights pursuant to his pretrial agreement by questioning him about a matter that was waived by the pretrial agreement, and also allowing the government to argue that Appellant's allegation, that he was not raising, was baseless.

*Admission of Stipulation of Fact from Appellant's Previous Court-Martial*

At his prior court-martial, Appellant entered into a stipulation of fact that detailed the circumstances surrounding the charges and specifications to which he pleaded guilty. The Government moved to admit the prior stipulation of fact during the sentencing proceedings in this trial as a matter in aggravation under Rule for Courts-Martial (R.C.M.) 1001(b)(4) and Military Rule of Evidence (Mil. R. Evid.) 414. The Defense objected under Mil. R. Evid. 403, claiming the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The Defense also argued that the stipulation of fact was needlessly cumulative of the other evidence pertaining to Appellant's previous court-martial convictions. Moreover, the Defense asserted that portions of the stipulation of fact did not consist of evidence of other offenses of child molestation under Mil. R. Evid. 414.

The military judge ruled that the stipulation of fact was admissible, but that he would only consider those portions of the stipulation related to the child molestation offenses Appellant committed upon CRH.[3] The military judge articulated on the record the facts and law upon which he based his decision. In his findings of fact, the military judge found the following: Appellant was previously convicted of child molestation offenses contemplated by Mil. R. Evid. 414; Appellant's previous convictions were based, in part, on the stipulation of fact; the stipulation was a "rendition" of the facts related to the charges in the previous court-martial; the stipulation was straightforward and "seemingly devoid of emotion"; and, the stipulation was not cumulative of the other evidence related to Appellant's previous court-martial. The military judge applied Mil. R. Evid. 414, Mil. R. Evid. 403, and relevant case law[4] in analyzing the facts. The military judge, in general, concluded that the stipulation "essentially is just the facts as they occurred" and what Appellant pleaded guilty to at his prior court-martial. In pertinent part, the military judge maintained that the evidence of other offenses of child molestation contained in the offered stipulation of fact, specifically the paragraphs related to offenses committed upon CRH, was permissible evidence in aggravation at sentencing. The military judge also found that the offered stipulation would not confuse the issues in this case, and that he could "create a just sentence" for Appellant by separating "passion" and applying "the facts and circumstances of this case." The military judge once again assured the parties that he would be "specifically considering . . . the acts of child molestation against [CRH]." Accordingly, the military judge explicitly addressed Mil. R. Evid. 403 and did not find that the evidence's "probative value was substantially outweighed by danger of unfair prejudice or confusion or a waste of time."

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Thompson*, 63 M.J. 228, 230 (C.A.A.F. 2006). We will affirm

---

[3] The military judge explained that he would only consider paragraphs 3 through 34 of Prosecution Exhibit 18.

[4] The military judge stated, "M.R.E. 414 evidence is permissible in sentencing and I rely on the case cited by the government for that proposition, *United States v. Tanner*, 63 M.J. 445."

a military judge's findings of fact unless the findings are clearly erroneous, and we review conclusions of law therefrom de novo. *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007). The evidence is considered "'in the light most favorable to the' prevailing party." *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996). An abuse of discretion occurs when (1) findings of fact are clearly erroneous, (2) an erroneous view of the law guides a decision, or (3) the decision is not one of the possible outcomes arising from the facts and law. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008); *see also United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

Mil. R. Evid. 414(a) provides: "In a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant."

As the Court of Appeals for the Armed Forces has acknowledged, Mil. R. Evid. 414 "establishes a presumption in favor of admissibility of evidence of prior similar crimes in order to show predisposition to commit the designated crimes." *United States v. Tanner*, 63 M.J. 445, 448 (C.A.A.F. 2006) (citing *United States v. Wright*, 53 M.J. 476, 482–83 (C.A.A.F. 2000)). "R.C.M. 1001 constitutes the gate through which such matters must pass during sentencing." *Id*.

R.C.M. 1001(b)(4) authorizes the prosecution to "present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty."

In a child molestation case, "evidence of a prior act of child molestation 'directly relat[es] to' the offense of which the accused has been found guilty and is therefore relevant during sentencing under R.C.M. 1001(b)(4)." *Tanner*, 63 M.J. at 449.

Evidence offered at sentencing under Mil. R. Evid. 414 is still subject to a balancing test pursuant to Mil. R. Evid. 403, under which relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members."

Plainly, the military judge did not abuse his discretion when he admitted the stipulation of fact from Appellant's previous court-martial over the Defense's objection. The military judge's findings were not erroneous, he properly considered the relevant law, and his ruling was wholly supported by the facts and law applicable to this matter. The previous stipulation of fact contained clear evidence of Appellant's commission of other offenses of child molestation. Specifically, the paragraphs considered by the military judge detailed Appellant's extensive abuse of his stepdaughter, CRH. In this case, Appellant was once again facing charges involving offenses of child molestation. Evidence of Appellant's prior offenses of child molestation directly related to the offenses to which he pleaded

guilty. Therefore, the previous stipulation of fact was properly admitted as evidence in aggravation at sentencing. Moreover, the military judge properly weighed the probative value of such evidence against any danger of unfair prejudice.

*Improper Sentencing Argument*

Pursuant to his pretrial agreement in this case, Appellant entered into a stipulation of fact with the Government. Accordingly, the Government and the Defense stipulated, "with the express consent of [Appellant], that the . . . facts are true and admissible for all purposes, to include any findings and sentencing proceedings." In general, the stipulation consisted of facts related to the offenses in this case as well as a section of "Additional Facts" that provided details of Appellant's previous court-martial results, statements Appellant made during the investigation into the previous misconduct, the investigation into Appellant's offenses in this case, and statements Appellant made to investigators in this case.[5] In the stipulation of fact, Appellant also stipulated to the admissibility of 16 prosecution exhibits "for all purposes in the findings and sentencing portions of this court-martial." One of these prosecution exhibits was a transcript of Appellant's oral unsworn statement from his previous court-martial in which he declared, in pertinent part, "I am completely committed to getting every bit of treatment I can, including chemical castration, if available."

At trial, the military judge conducted a thorough inquiry with Appellant about the purpose, effect, and uses of the stipulation of fact. Appellant understood that the facts contained within the stipulation, if admitted into evidence, would be uncontroverted facts in this case. Appellant understood and agreed that the stipulation would be used by the military judge to reach findings and determine an appropriate sentence.

The military judge discussed every paragraph of the stipulation of fact with Appellant. Appellant agreed that each paragraph and subparagraph was true and accurate. Appellant also agreed to the admissibility of the prosecution exhibits listed within the stipulation of fact. There being no objection, the military judge admitted the stipulation of fact into evidence.

In addressing the strength of Appellant's "urges" during his sentencing argument, trial counsel asserted:

> Now, it is interesting because Airman Basic Merritt even suggested his own chemical castration and that is in the evidence before Your Honor. Now, I cannot comment and do not know, we cannot know, whether that suggestion was

---

[5] During his interview with investigators in this case, Appellant stated substantially the following: that he "stood [his] ground on denial" during initial interviews; he was sorry that investigators had to "listen to a liar"; he "lied through [his] teeth during the other interview"; he knew AS, but did not sexually abuse her; and he did not know MF.

sincere or insincere. But, just looking at it logically, just looking at it logically, if it was insincere, then it is more in a long pattern of deception and lies.

If it was sincere, on the other hand, just logically, if it was sincere, it speaks volumes about the strength of those urges, the uncontrollability of those urges that he would suggest his own chemical castration. How strong must those urges be if that is the suggestion, if that suggestion is sincere? What does that say about Airman Basic Merritt's risk to reoffend?

Trial counsel later recounted aggravating factors, arguing:

Then, there are the aggravating factors in this case, and there are many. There are many aggravating factors, which again cause trial counsel to recommend at least 15 years of confinement. And, all we have to do is to peruse the evidence. The evidence speaks volumes; more than one victim, 24 past convictions, selection and age of those victims, sodomizing his stepdaughter over and over again. How does that bode for his risk? Lying about his deviance over and over again; "I don't know [MF]. I never touched [AS];" but, also the blatant and risky behavior.

Trial defense counsel did not object to any of trial counsel's sentencing argument or rebuttal argument.

On appeal, Appellant claims that his "offer to undergo chemical castration . . . was not part of [his] second court-martial." Appellant acknowledges that his previous unsworn statement was incorporated into the stipulation of fact in this case. Nonetheless, he complains that such information was somehow irrelevant, thus making trial counsel's argument without evidentiary support. Appellant raises a similar concern with the second portion of trial counsel's argument. Appellant generally contends that evidence related to his previous offenses was not relevant. Moreover, Appellant argues that evidence indicating he was untruthful to investigators in this case, even though he stipulated to those facts and agreed to the stipulation's uses, is evidence of uncharged misconduct and not relevant evidence in aggravation.

Because there was no objection at trial, we review the propriety of trial counsel's argument for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013). To prevail under a plain error analysis, Appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States*

*v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

Trial counsel presented the military judge with an appropriate argument based on properly admitted, relevant evidence and reasonable inferences derived therefrom. Appellant has failed to show that trial counsel's argument was in fact error, let alone plain or obvious error.[6] Having considered the content, and indeed the context, of trial counsel's closing argument, we find no error that materially prejudiced Appellant. *See United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000).

*Unlawful Command Influence*

On appeal and for the first time, Appellant claims that this second court-martial was "so permeated with actual and apparent unlawful command influence that it was impossible for Appellant to receive a fair trial." Appellant accuses the Government of processing and prosecuting his second court-martial "in a vindictive manner . . . in an effort to secure additional confinement time that [it] lost as a result of the previous pretrial agreement for Appellant's first court-martial." Appellant generally complains that the Government, through repeated attempts, turned his second court-martial into a continuation of his first court-martial. In support of this allegation, Appellant highlights the following: the same legal office prosecuted both courts-martial; the same senior trial counsel prosecuted both courts-martial; the same expert witness testified in both courts-martial; the same commander preferred the charges although Appellant had been reassigned; and the same convening authority referred the charges although Appellant had been reassigned to a new command. Additionally, Appellant maintains that "the [G]overnment significantly overcharged the case and was forced to withdraw and dismiss six specification under two charges." Accordingly, Appellant requests his convictions and sentence be set aside.

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states that "[n]o person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial . . . or any member thereof, in reaching the findings or sentence in any case . . . ." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)).

---

[6] Even if trial counsel's argument was in error, Appellant's case was tried before a military judge sitting alone, and "[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). The Court of Appeals for the Armed Forces has also recognized, "[a]s part of this presumption we further presume that the military judge is able to distinguish between proper and improper sentencing arguments." *Id*.; *see also United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) ("As the sentencing authority, a military judge is presumed to know the law and apply it correctly absent clear evidence to the contrary.").

We review allegations of unlawful command influence de novo. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013). "On appeal, the accused bears the initial burden of raising unlawful command influence. Appellant must show: (1) facts, which if true, constitute unlawful command influence; (2) that the proceedings were unfair; and (3) that the unlawful command influence was the cause of the unfairness." *Id.* (citing *United States v. Richter*, 51 M.J. 213, 224 (C.A.A.F. 1999)). The initial burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation. *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002). Appellant must initially present "some evidence" of unlawful command influence. *Id.* (quoting *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999)).

After an issue of unlawful command influence is raised by some evidence, the burden shifts to the Government to rebut an allegation by persuading the court beyond a reasonable doubt that: (1) the predicate facts do not exist; (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence will not affect the findings or sentence. *Biagase*, 50 M.J. at 151.

Indeed, many of the same organizations and individuals participated in both courts-martial; however, such participation, standing alone, is not evidence of unlawful command influence. Moreover, the Article 32 investigating officer recommended four specifications under the Article 120 charge and two specifications under an Article 128 charge not be referred to a court-martial. Appellant's former commander—the same accuser who preferred charges in the first court-martial—agreed with the investigating officer and recommended dismissal of the six aforementioned specifications. The forwarding special court-martial convening authority recommended dismissal of the six specifications. The convening authority's staff judge advocate recommended dismissal of the six specifications. The convening authority dismissed the six specifications. These recommendations and actions are not evidence of a vindictive prosecution intent on further punishing Appellant. Accordingly, Appellant has offered no evidence, apart from his own allegations and speculation, that these facts constituted unlawful command influence, or that the proceedings of his second court-martial, during which he pleaded guilty pursuant to a pretrial agreement before a military judge alone, was unfair. We further find that Appellant failed to raise some evidence that would cause an objective, disinterested observed, fully informed of the facts and circumstances in this case, to harbor a significant doubt about the fairness of these proceedings.

Even if we found Appellant met his initial burden through these allegations, we are nonetheless convinced beyond a reasonable doubt that the facts identified by Appellant do not constitute unlawful command influence. Likewise, we are convinced beyond a reasonable doubt that any possible unlawful command influence did not affect the pretrial agreement, Appellant's pleas of guilty, the military judge's findings consistent with Appellant's pleas, or the sentence that was limited by the terms of the pretrial agreement.

An objective, disinterested observer, fully informed of all the facts and circumstances, would harbor no significant doubt about the fairness of Appellant's proceedings.

*Prosecutorial Misconduct*

Appellant accuses the Government of "misleading the [investigating officer] regarding the availability of the victims to testify at the Article 32 hearing,[7] when the Government stated they were not available, prior to the Government even inviting the victims to testify at the Article 32 hearing." Appellant claims that this "misconduct" denied him "equal access to the witnesses" after the investigating officer found the civilian witnesses unavailable to testify.

On 17 October 2014, in an email discussing hearing logistics, a Government representative advised trial defense counsel, as follows:

> Witnesses: I want to make sure you are aware that the Government will not be calling either victim to testify at the Art. 32. If you want to request them, please let us know ASAP so that we can run this through the [investigating officer] in advance. In the event he determines that they are reasonable [sic] available, we will need adequate time to process travel orders, etc.

Trial defense counsel responded less than two hours later, as follows:

> As to witnesses, the Defense does not, at this time, have any witnesses it wishes the Government to procure to testify on behalf of the Defense. We appreciate you thinking about travel for Defense witnesses and understand that you would need time to process any travel request. If we decide to request any Defense witness we will attempt to provide those named witnesses to you in a timely fashion to allow your office to complete the paperwork and travel arrangements. We will not opine as to what witnesses the government should or should not call in their own case.

In this email, trial defense counsel also requested a witness list from the Government. Within two hours, the Government informed trial defense counsel that the Government was only calling two agents who investigated the offenses in this case.

---

[7] Rule for Courts-Martial (R.C.M.) 405 applied as modified by Executive Order 13669 on 13 June 2014. Exec. Order No. 13669, 79 F.R. 34,999 (18 June 2014). R.C.M. 405 has been modified substantially several times since.

On 21 October 2014, trial defense counsel requested discovery of "copies of any communications between the government and the alleged victims or their guardians regarding the alleged victims' willingness or availability to provide testimony at the Article 32 hearing or trial." The Government refused to produce the requested material, claiming privilege pursuant to Mil. R. Evid. 514.

On 22 October 2014, the Government invited AS, MF, and their guardians to appear as witnesses at the 3 November 2014 hearing. On 22 October 2014, AS's guardian declined the invitation and informed the Government that AS would not participate in the hearing. On 27 October 2014, MF, through counsel, also declined the invitation, asserting her right not to testify at the hearing. The Government provided this information to the investigating officer on 27 October 2014 and requested the investigating officer find AS and MF unavailable to testify. The next day, the investigating officer sought any defense objections to the Government's request that he find the witnesses unavailable.

On 29 October 2014, the Defense objected to AS and MF being found unavailable. The Defense maintained the investigating officer could not properly make such a determination without considering any communications between the Government, the witnesses, or the witnesses' guardians. Trial defense counsel also stated that "[w]e have no reason to believe the government acted improperly when communicating with the alleged victims or their representatives; however, the government is not entitled to a presumption that it has complied with the rules while denying the IO and defense the ability to access all relevant information." Despite the Defense's objections, the investigating officer found AS and MF unavailable.

We review arguments of prosecutorial misconduct raised for the first time on appeal for plain error. *See United States v. Akbar*, 74 M.J. 364, 398 (C.A.A.F. 2015). Appellant must show not only the underlying facts alleged to constitute misconduct, but also that the misconduct resulted in some "unfairness in the proceedings." *Id*. at 399.

Appellant asserted no facts constituting misconduct. The Government informed trial defense counsel that it did not intend to call AS and MF as witnesses at the Article 32 hearing. The Defense did not request AS or MF be made available to testify. Rather, the Defense's consternation remained with the Government's refusal to provide discovery related to the victims' communications with the Government—communications in which trial defense counsel had "no reason to believe the [G]overnment acted improperly." Similarly, we have no reason to believe the Government acted improperly when it requested the investigating officer find AS and MF unavailable after these civilian witnesses declined the Government's invitation to testify. Assuming these facts do amount to some form of prosecutorial misconduct, Appellant suffered no unfairness in his proceedings. These civilian witnesses could not be compelled by the investigating officer to appear or testify as part of the investigation. Appellant offers no evidence to show he

was prejudiced by the investigating officer's determination that these witnesses were unavailable to testify during Appellant's Article 32 investigation.

*Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of Court

ACM 38819